IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ARLO W. REMMEN, and ASHLAND SALVAGE, INC., a Nebraska corporation, | ) ) ) | 4:09CV3028 |
| Plaintiffs, | ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| CITY OF ASHLAND, NEBRASKA; SAUNDERS COUNTY, NEBRASKA; STATE OF NEBRASKA DEPARTMENT OF ROADS; STATE OF NEBRASKA DEPARTMENT OF ENVIRONMENTAL QUALITY; JOHN CRAIG, Director of the Nebraska Department of Roads; MICHAEL J. LINDER, Director of the Nebraska Department of Environmental Quality; and JOHN AND JANE DOE(S), real, true and full names unknown, current and past representatives of all of the foregoing representatives, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

It appears from the complaint filed in this matter that the plaintiff, Arlo W. Remmen, has owned a parcel of real estate in Ashland, Nebraska, since August 1994, and that his corporation, Ashland Salvage, Inc., operated a junkyard on the property from June 1987 until February 2007, when the City of Ashland exercised its police power to clear everything off the property. In his complaint, Remmen recites several other adverse actions that the City took against him over the course of twenty years:

>In August, 1987, unbeknownst to Remmen, the City of Ashland (the "City") evidently did a change of zoning for the property, eliminating use as a junkyard. (Filing 1, ¶ 4.)

In April, the City notified Remmen that he needed to fence the Yard, but after attorney Hartsock showed up at a council meeting and argued about the constitutionality of the requirement, attorney Lindahl, in August, explained the Yard had "grandfather" rights, and need not have a fence." (*Id*., ¶ 9.)

In October, 1991, Todd Ellis of the Nebraska Department of Environmental Quality (the "NDEQ") received a complaint about burning trash at the Yard; he also received complaints about various things at the Yard in December, and again in February of 1992. Nothing came of those complaints, which Remmen understands were all made by the City. (*Id.*, ¶ 10.)

In March of 1993, Sapp [who then owned the property and leased it to Remmen] and the City made an agreement whereby Sapp would repossess the Yard from Remmen and clean all the junk off the Yard, in exchange for which the City would pay him $5,000. (*Id.*, ¶ 11.)

In October, 1994, the City contacted the NDOR [Nebraska Department of Roads] to oppose reissuance of Remmen's junkyard permit; the NDOR disagreed with the opposition, and issued a renewal permit." (*Id.*, ¶ 16.)

In November, 1994, Remmen was contacted by the City, which claimed Remmen was violating the zoning laws; nothing came of this contact. (*Id.*, ¶ 17.)

In May, 1995, another complaint about the Yard was made to the NDEQ; and the City contacted the NDOR asking the NDOR to consider purchasing the Yard by eminent domain, early, prior to their expected need. The NDOR indicated they didn't do that sort of thing. (*Id.*, ¶ 18.)

In September, 1995, Remmen received an "order" from the City that Remmen "cease and desist" using a trailer we set up for our night watchman, even though such an arrangement seemed to be allowed under City zoning regulations. (*Id.*, ¶ 19.)

In October, 1995, the [Nebraska Motor Vehicle Industry Licensing] Board contacted Remmen and said they had reports about Remmen's business that indicated Remmen needed a wrecker/salvage license after all, so Remmen applied for one in November. The City filed a protest. [In May 1996, the Board allowed the City's protest and refused to issue the license. The Board's decision was overturned on appeal to the Lancaster County District Court in February 1997.] (*Id.*, ¶¶ 20, 23, 25.)

In December, the City also instituted criminal charges against Remmen, for zoning violations. [He was found not guilty in July 1996.] (*Id.*, ¶¶ 21, 24.)

In January, 1996, Remmen applied for utility services from the City, but was turned down. (*Id.*, ¶ 22.)

In February and March, 1997, complaints were again made to the NDEQ and the Saunders County Health Department; Remmen believes both were from the City, as no one else had made such complaints in the past. (*Id.*, ¶ 26.)

In September, 1997, Remmen was ticketed for supposedly violating the road right-of-way. (*Id.*, ¶ 27.)

In November, 1997, City attorney Morton complained to the EPA about not getting good response from the NDEQ; the NDEQ's response to the EPA was that it was only the City who had complained. (*Id.*, ¶ 28.)

Sometime in 1998, the City, again unbeknownst to Remmen, apparently made further zoning changes about the Yard. (*Id.*, ¶ 29.)

In August, 1998, . . . the City reported to various agencies that Remmen had buried electrical transformers in the Yard. (*Id.*, ¶ 31.)

In October, the City passed an ordinance prohibiting parking anywhere near the Yard. (*Id.*, ¶ 33.)

In February and March, 1999, the City again made various complaints to both the NDEQ and the EPA in Kansas City. (*Id.*, ¶ 34.)

In April, 1999, Remmen was hired by an Ashland resident, Keith Mosley, to do some dirt work for some construction; the City threatened to revoke the permit if Remmen did the work. (*Id.*, ¶ 36.)

During the period of May through August, 1999, Remmen was issued a series of parking tickets by the City, for parking along the streets by the Yard. Remmen hired attorney Wieland, who negotiated an agreement with the City's attorney Steele, where the tickets would be dismissed, no new ones would be prosecuted, and a specific "safe zone" parking area near the Yard was agreed to. (*Id.*, ¶ 37.)

In 2000 the City made a written offer to buy the property for $100,000, but the offer had expired before Remmen ever saw it, from his attorney. Remmen understood if he didn't accept, a condemnation would be started. (*Id.*, ¶ 38.)

In 2001, from May to September, the City issued Remmen fifteen (15) more parking tickets; all of them were dismissed for lack of proof, by County Judge Miller. (*Id.*, ¶ 39.)

In 2002, between February and August, the City made various threats about junk along Dennis Dean Road, which they eventually tried to clean up themselves and charge Remmen back for its costs. (*Id.*, ¶ 40.)

Since 2002 it seems like Remmen has been sued, or suit has been threatened, a number of times. Those cases have been the District Court in Saunders County. Any decisions in those cases have been erroneous. (*Id.*, ¶ 41.)

In 2006 the City put a chain link fence across the main, cemented driveway into the Yard. Remmen had to rearrange the materials in the Yard, to make a new entrance. The new entrance didn't have paving, which made it more difficult to use in bad weather. (*Id.*, ¶ 48.)

> In late January and early February, 2007, the . . . City of Ashland entered the property . . . and cleared the Yard of all of the property situated thereon, including all junk, salvage and recyclable metals and other materials; structures used as an office, a residence, and work shops; vehicles (regardless of their operating conditions); trees, shrubs and the like; and any thing else located thereon except for the soil. (*Id.*, ¶ 51.)

> In 2002, 2003, and 2005, the Defendant Ashland took actions against the Plaintiffs, including the filing of lawsuits against Plaintiffs, for the purpose of severely limiting the permissible use or uses of the Plaintiffs' real and personal property in Ashland. Ashland maintained that the Plaintiffs' real property had been rezoned and otherwise restricted, and that any continued uses as a salvage or junk-yard, pre-existing or otherwise, were thereafter severely limited. Such restrictions were not valid and were contrary to law. (*Id.*, ¶ 56.)

Remmen alleges that "[a]fter Ashland asserted their [sic] various claims against the Plaintiffs [in 2002, 2003, and 2005],the various other Defendants, coincidentally or in concert, took various actions to severely restrict the use of a [sic] Plaintiffs' property and salvage and junkyard business." (*Id.*, ¶ 56.) Remmen complains that "[t]he Defendants' actions in imposing limits on the use of the Plaintiffs' real and personal property and limiting access to their property have substantially diminished the values of Plaintiffs' land and business enterprises without compensation. Moreover, Plaintiffs are thereby being coerced into abandoning or foregoing most of the economic benefits they have traditionally derived from their business operations and real property." (*Id.*, ¶ 66.) He claims that the defendants' actions "are ultra vires, void, constitute takings without compensation and violate the due process and the equal protection guaranteed by the United States Constitution[;] that "Plaintiffs' property has been wrongfully converted by Defendants[;] and [that] Plaintiffs are entitled to a return of their property, or its value, and to their damages due to the deprivation caused by the Defendants." (*Id.*, ¶¶ 67, 71.) It is alleged that the court "has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331,42 U.S.C. §§1983 and 1988, and 28 U.S.C. § 2201." (*Id.*, ¶ 61.)

I construe the complaint as asserting a § 1983 action for alleged violations of (1) the Just Compensation Clause of the Fifth Amendment, (2) the Due Process Clause of the Fourteenth Amendment, and (3) the Equal Protection Clause of the Fourteenth Amendment. The plaintiffs seek injunctive relief, monetary damages, and attorney's fees for these alleged constitutional violations. In addition, the plaintiffs request "a declaration pursuant to 28 U.S.C. § 2201 that Defendants' actions are ultra vires, void and in excess of Defendants' authority." (*Id.*, p. 12.) The City has answered the complaint, but the other defendants, which include Saunders County, the Nebraska Department of Roads and its director, John Craig, and the Nebraska Department of Environmental Quality and its director, Michael J. Linder, have moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (Filings 29, 39.)

Saunders County argues that subject matter jurisdiction is lacking because "federal courts are barred from considering the merits of a takings claim until a private litigant exhausts state remedies," *Cormack v. Settle-Beshears*, 474 F.3d 528, 531 (8th Cir. 2007), and the plaintiffs have not alleged that they either sued or were unable to sue for inverse condemnation under Nebraska law. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Fifth Amendment's] Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 195 (1985). "If a state's remedies are inadequate or unavailable, exhaustion is not required," but "[t]his exception to *Williamson County* is narrow, and the claimant bears the 'heavy burden' of showing that the state remedy is inadequate. *Cormack,* 474 F.3d at 531 (quoting *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 146 (1st Cir. 2002)).

Under Neb. Const. art. I, § 21, no person's property shall be taken or damaged for public use without just compensation. As stated in *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 680, 684, 515 N.W.2d 401, 405 (1994) [*overruled on other grounds by Scofield v. State, Dept. of Natural Resources*, 753 N.W.2d 345, 357 (Neb. 2008)], an inverse

-6-

> condemnation action . . . is "a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings." The language of Nebraska's constitutional provision prohibits both the taking and the damaging of property without just compensation. Thus, the language is broader than that of the federal constitutional provision, U.S. Const. amend. V, and recovery under the state provision has been allowed for damages caused by *temporary takings*, as well as permanent takings. *Whitehead Oil Co., supra*.

*Maloley v. City of Lexington*, 536 N.W.2d 916, 921 (Neb.App. 1995) (emphasis in original). "Inverse condemnation has been characterized as an action or eminent domain proceeding initiated by the property owner rather than the condemnor, and has been deemed to be available where private property has been actually taken for public use without formal condemnation proceedings and where it appears that there is no intention or willingness of the taker to bring such proceedings." *Papio-Missouri River Natural Resources Dist. v. Willie Arp Farms, Inc.*, 739 N.W.2d 776, 783 (Neb.App. 2007) (citing *Krambeck v. City of Gretna*, 254 N.W.2d 691 (Neb. 1977)).

Because the plaintiffs have not pleaded any facts to show that their takings claim is ripe for determination in this court,[1] it will be dismissed for lack of subject matter jurisdiction. This dismissal affects all defendants.

The plaintiffs' due process claim is also unripe because it is based on the same set of facts as the takings claim. As explained in *USCOC of Greater Missouri, LLC v. City of Ferguson*, No. 4:07-CV-1489 (JHC), 2008 WL 2065033, at *6 (E.D.Mo. May 14, 2008):

> The Eighth Circuit has held that a procedural due process claim is unripe unless plaintiff has exhausted its state judicial remedies. *See*

---

[1] Remmen has only alleged that "[i]n accordance with the Nebraska statutes, Plaintiffs presented their claim to the Defendant [City of] Ashland in February, 2008. Defendant Ashland took no action on Plaintiffs' claim." (Filing 1, ¶ 70.)

*Wax'N Works v. City of St. Paul*, 213 F.3d 1016, 1019-20 (8th Cir. 2000). Similarly, the Seventh Circuit extended *Williamson* to include substantive due process claims that are related to land use disputes. *Forseth v. Village of Sussex*, 199 F.3d 363, 368-371 (7th Cir. 2000). The Seventh Circuit explained that "[l]abels do not matter. A person contending a state or local regulation of the use of land has gone overboard must repair to state court." *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir.1994). As such, the ripeness requirements applies with "full force to due process claims (both procedural and substantive) when based on the same facts as a takings claims." *Greenfield Mills v. Macklin*, 361 F.3d 961-62 (7th Cir.2004); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88-89 (2d Cir.2002) (applying ripeness requirement to due process and equal protection claims). A substantive due process claim that alleges a public use claim, however, is exempt from the *Williamson* ripeness requirement. *See Rumber v. Dist. of Columbia*, 487 F.3d 941, 945 (D.C.Cir. 2007) (noting that the circuits all agree on this exception).

In the present case, there is no allegation that the plaintiffs' property was taken for a private use, nor has it been alleged that state judicial remedies were exhausted with respect to any procedural due process claim, such as the claim that the property's zoning was changed without Remmen's knowledge. Thus, the plaintiffs' due process claim, whether treated as substantive or procedural in nature, will also be dismissed as against all defendants for lack of subject matter jurisdiction.

Similar considerations apply to the plaintiffs' equal protection claim. As further explained in the *USCOC* case:

> Courts have extended *Williamson*'s ripeness requirement to cover equal protection claims raised in land use disputes. *See; Rumber*, 487 F.3d at 945 (D.C.Cir. 2007); *Patel v. City of Chicago*, 383 F.3d 569, 573 (7th Cir. 2004); *County View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F.Supp.2d 142, 149 (S.D.N.Y. 2006); *Goldfine v. Kelly*, 80 F.Supp.2d 153, 159 (S.D.N.Y. 2000). A plaintiff can avoid this requirement if his claim "can be made independently from a takings claim." *Patel*, 383 F.3d at 573. Such an independent claim occurs in the

-8-

> land use context, if absent an allegations related to a fundamental right or a suspect class, the plaintiff alleges "governmental action wholly impossible to relate to legitimate governmental objectives." *Forseth,* 199 F.3d at 370-71.

*Id.* "[T]he equal protection clause does not only protect 'fundamental rights,' and does not only protect against 'suspect classifications' such as race. It protects citizens from arbitrary or irrational state action." *Batra v. Board of Regents of University of Nebraska,* 79 F.3d 717, 721 (8th Cir. 1996). "Plaintiff need not prove that another fundamental right was trampled—the right to equal protection of the laws is itself fundamental. . . . But the discrimination must be intentional, and the government's motive must fail to comport with the requirements of equal protection." *Id.* "[T]he key requirement is that plaintiff allege and prove unlawful, purposeful discrimination." *Id.*

While Remmen does not specifically allege that the City of Ashland acted maliciously, a fair reading of the complaint is that the clearing of the property in 2007 was the culmination of a 20-year campaign by the City to restrict his use of the property and to put him out of business. Remmen fails to allege, however, that he and his corporation were treated differently from similarly situated property owners and businesses. Discrimination is an essential element of any equal protection claim. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). In short, the complaint does not state a claim against any defendant upon which relief can be granted under the Equal Protection Clause.

Because no actionable equal protection claim has been alleged, and because the takings and due process claims are not ripe for determination, the court does not have subject matter jurisdiction over the plaintiff's § 1983 action. Remmen's request for declaratory relief also cannot be entertained because "the Declaratory Judgment Act

does not enlarge the jurisdiction of the federal courts; it is 'procedural only.'" *Vaden v. Discover Bank,* 129 S.Ct. 1262, 1278 n. 19 (2009) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). Remmen does not purport to invoke the court's supplemental jurisdiction to hear any state law claims, but if he had, those claims would also be subject to dismissal. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").

Accordingly,

IT IS ORDERED that the defendants' motions to dismiss (filings 29, 39) are granted in part and denied in part, as follows:

1. This action is dismissed for lack of subject matter jurisdiction.

2. In all other respects, the motions are denied without prejudice.

3. Final judgment shall be entered by separate document.

September 18, 2009          BY THE COURT:

                            *Richard G. Kopf*
                            United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.